UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SERGIO MARSHALL, ) | Civil Action No.: 4:08-cv-2775-GRA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| RICHARD BAZZLE, Warden and ) | |
| BOB OLSON, Food Service Director, ) | |
| ) | |
| Defendant. ) | |

## I. INTRODUCTION

Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and, at time of the incidents set forth in his Complaint, was housed at the Perry Correctional Institution (PCI). Plaintiff asserts claims of deliberate indifference and cruel and unusual punishment pursuant to 42 U.S.C. § 1983.

Presently before the Court is Plaintiff's Motion for Injunctive Relief (Document # 22), Plaintiff's Motion for Partial Summary Judgment (Document # 26), Plaintiff's Motion for Temporary Restraining Order (Document # 29), and Defendants' Motion for Summary Judgment (Document # 30). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the possible consequences of failing to respond to the Motion for Summary Judgment. Plaintiff timely filed his Response to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered

for review by the district judge.

## II. FACTS

Defendant Bob Olson is the Food Service Director at PCI. Olson Affidavit at ¶ 1 (attached to Defendants' Motion for Summary Judgment). Defendant Richard Bazzle was the Warden at PCI at all times during the incidents alleged in the Complaint. Bazzle Affidavit at ¶ 2 (attached to Defendants' Motion for Summary Judgment).

On April 14, 2007, Plaintiff was served a raw chicken heart that was mixed in with his serving of chicken livers. Plaintiff Affidavit I at ¶ 3 (attached to Complaint). He bit into the chicken heart and a large amount of blood was released from the heart. Id. He immediately vomited from the "outburst" of blood. Id. Plaintiff notified the officers in SMU II. Id. An Incident Report was written concerning the matter. Id.

Plaintiff also filed a step one grievance. Inmate Grievance Form dated April 15, 2007 (attached to Complaint). In the Warden's response to Plaintiff's grievance, he indicates that a recent delivery of chicken livers contained a large percentage of hearts and that the Food Service Director requested that they discontinue delivery of any chicken livers or hearts to PCI. Inmate Grievance Form dated April 15, 2007; see also Olson Aff. at ¶ 7. The Warden also indicated that all food served in SMU is in keeping with applicable state and federal statutes, DHEC Regulations, and the "Recommended Dietary Allowances" as defined by National Research Council. Id. He also stated that the procedures set forth in SCDC Policy ADM-16.05 were being followed. Id. Plaintiff signed that he accepted the action taken by the Inmate Grievance Council (IGC) and considered that matter closed. However, Plaintiff subsequently filed a step 2 grievance, indicating that he wished to appeal the Warden's decision. Inmate Grievance Form dated May 21, 2007 (attached to Complaint). He indicated that he was not satisfied with the action taken because he felt the Food Service Director

should monitor all food before it is served to inmates. Id. The Warden responded by stating that all of the Food Service Operations within the various institutions had problems with the batch of chicken livers delivered during the same period of time. Id. He stated that the Food Service Branch had decided to discontinue doing business with the company that delivered the chicken livers. Id.; see also Olson Aff. at ¶ 10. Olson avers that he inspected the chicken heart presented by Plaintiff and it did not appear to have been eaten. Olson Aff. at ¶ 11.

Plaintiff avers that he suffers constant diarrhea and stomach pain as a result of eating the raw chicken heart. Id. Medical records reveal that Plaintiff complained of nausea, diarrhea and vomiting related to the consumption of a raw chicken heart. Medical Records dated April 15-16, 2007 (attached to Complaint). Jean Rutledge is a registered nurse and serves as Health Care Authority at PCI. Rutledge Affidavit at ¶ 1 (attached to Defendants' Motion for Summary Judgment). She avers that no other inmates made complaints about becoming sick from the food in April of 2007 and that Plaintiff has not been diagnosed with or treated for food poisoning since he has been at PCI. Id. at ¶ 4. However, he has had numerous sick call requests regarding general stomach pains both before and after he consumed the chicken heart. Id. at ¶ 5 and attached medical records.

On May 22, 2008, Plaintiff was eating his lunch of beef fried rice when he bit into a hard sharp substance. Plaintiff Affidavit II at ¶ 3 (attached to Complaint). He spit it out and found small pieces of glass in his beef fried rice. Id. He notified the officers in SMU II. Id. Lt. Meredith told Plaintiff he would contact medical personnel. Id. See also McCray Affidavit (attached to Complaint). Plaintiff filed a step one grievance concerning this matter. Inmate Grievance Form dated May 22, 2008. The Warden responded by stating that he had discussed the incident with the Food Service Director, who indicated that there is no glass in the kitchen or around the food. Id.; see also Olson Aff. at ¶ 15. He also stated that staffing limitations prevent direct supervision of the

inmate food servers in Plaintiff's dorm. Id. In his Affidavit, Bazzle states that, in keeping with security policies, there is absolutely no glass present in kitchens at PCI, and, thus, there is no feasible way that the glass alleged to be in Plaintiff's food originated from the kitchen. Bazzle Aff. at ¶ 8. Olson avers that he has no knowledge of any complaints of glass being in any other inmate's meal. Olson Aff. at ¶ 16. He also avers that there have been occasions when inmates have placed foreign materials in their food. Id.

Plaintiff avers that the broken glass caused him harm to the left side of his cheek and his back tooth. Plaintiff Aff. II at ¶ 3. Nurse Rutledge avers and his medical records reveal that he made no complaints on May 22, 2008, or at any other time about any injuries resulting from glass in his food, nor is there any mention in Plaintiff's medical records of glass in his food. Rutledge Aff. at ¶ 17 and attached medical records.

Defendant Bazzle avers that, as Warden, he ensured that the kitchen followed proper preparation standards and was in keeping with applicable state and federal statutes as well as SCDC policy. Bazzle Aff. at ¶ 4. Either he or his designee conducted weekly inspections of the kitchens and cafeterias, including the warming kitchen in the SMU unit. Id. at ¶ 5.

## III. DISCUSSION

### A. Plaintiff's Motions for Injunctive Relief and for Temporary Restraining Order

In his Motion for Injunctive Relief, Plaintiff seeks an order directing 1) Defendant Olson to comply with all safety standards and sanitation requirements as specified by SCDC Policy; 2) that food service employees be present at all SMUs during the preparation and distribution of food; and 3) that only trained inmate food service workers be allowed to serve and distribute food in all SMUs instead of security officers. In his Motion for Temporary Restraining Order, Plaintiff requests permission to be moved to a safer environment "until Defendants' actions are clarified."

On May 20, 2009, Plaintiff filed a Notice of Change of Address (Document # 37) indicating that he has been transferred to the McCormick Correctional Institution.

Plaintiff's claims for injunctive relief are moot. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition about which he complains. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir.1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir.1983). Because Plaintiff has been transferred from PCI, he is no longer subject to the food problems about which he complains. Thus, Plaintiffs' Motion for Injunctive Relief and Motion for Temporary Retraining Order are moot.

### B. Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment

#### 1. Standard of Review

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on

beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## 2. Constitutional Violations

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was

violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiff asserts causes of action for deliberate indifference and cruel and unusual punishment, which essentially merge into one claim for violation of his Eighth Amendment rights. Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993), the Fourth Circuit stated that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate. McElveen v. County of Prince William, 725 F.2d 954 (4th Cir. 1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375,1379 (4th Cir. 1993).

Plaintiff's Complaint surrounds a basic human need, that is, food. "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." Shrader v. White, 761 F.2d 975 (4th Cir. 1985).

Plaintiff asserts two instances during which foreign objects were mixed in with the food he was served at PCI.[1] In April of 2007, he found and bit into a chicken heart with his chicken livers. In May of 2008, Plaintiff found broken glass in his beef fried rice. A prisoner is entitled only to reasonably adequate food. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment. Bedell v. Angelone, No. 2:01CV780, 2003 WL 24054709, *14 (E.D. Va. 2003). (Being served rotten food is unpleasant and unfortunate; however, it simply does not rise to the level of a constitutional violation because Plaintiff has not shown that is resulted in a serious deprivation or that Defendants were deliberately indifferent).

Plaintiff has failed to show that the foreign objects in his food resulted in serious or significant physical or mental harm. Nurse Rutledge avers that Plaintiff has never been diagnosed as having nor has he been treated for food poisoning while at PCI. The stomach cramping, nausea, vomiting, and diarrhea he suffered immediately following his consumption of the chicken heart does not rise to the level of a significant harm. See, e.g., Martin v. Arpaio, 2006 WL 3717383, *10 (D.Ariz. Nov. 14, 2006) (holding that cramping, diarrhea, and vomiting are de minimis injuries). Furthermore, although Plaintiff avers that he continues to suffer from stomach cramping and diarrhea, there is no indication in his medical records and Plaintiff has failed to present any other evidence to indicate that any such conditions arose from his consumption of the chicken heart.

---

[1] Plaintiff filed a Motion for Leave to Amend his Complaint (Document # 19) in which he sets forth a third instance during which he found rocks in his serving of beans. However, allowing the amendment would be futile because the claim would fail for the same reasons the claims addressed herein fail. Thus, it is recommended that Plaintiff's Motion for Leave to Amend his Complaint be denied.

Importantly, Nurse Rutledge avers and his medical records indicate that Plaintiff has always had stomach problems, both before and after the chicken heart incident.

Additionally, Plaintiff's "harm" to his cheek and back tooth following the broken glass incident is nothing more than de minimis. Plaintiff does not elaborate on the type of "harm" he received and nothing in his medical records shows that he ever complained to medical personnel about any injuries resulting from biting into broken glass.

Plaintiff has also failed to show that Defendants knew of and disregarded an excessive risk to inmate health or safety. Plaintiff presents the Affidavit of Daniel Shannon, in which Shannon states that, as an inmate, he was employed as a kitchen worker with SCDC in 2004 and 2006 and that the containers that contained frozen livers were clearly labeled "not for human consumption." Shannon Affidavit at ¶¶ 1, 3. Shannon's Affidavit does not indicate at which institution he worked nor whether the frozen livers were served to inmates. Also, the chicken heart incident occurred in 2007. Nevertheless, even if Defendants in the present case knew that the chicken livers were labeled "not for human consumption," for the reasons discussed above, such a fact does not equate to an excessive risk to inmate health or safety. Once the problem with the chicken hearts was discovered to have been a problem at several institutions, the SCDC discontinued its business with the company that provided the livers. Further, Plaintiff has failed to present evidence showing that Defendants knew that broken glass was in Plaintiff's food. Defendants produce evidence that indicates that the kitchens at PCI contain no glass and so the broken glass could not have originated from there. Plaintiff presents no evidence that Olson or Bazzle put the glass into his food or that they knew of someone that did.

Finally, the record reveals that Plaintiff's problems with the chicken heart and the broken glass were isolated incidents. Nurse Rutledge avers that no other inmates complained of any illnesses arising from the food served in April of 2007. Olson indicates that the kitchens at PCI do not contain glass and he is unaware of any complaints from other inmates about glass in their food. Whether

considered alone or in the aggregate, Plaintiffs complaints do not rise to the level of an Eighth Amendment violation. Accordingly, summary judgment is appropriate in favor of Defendants.

### 3.     Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals

further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Defendants in the present case have not transgressed any "bright lines" of constitutional conduct and, as such, are entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated above, it is recommended that Plaintiff's Motion for Leave to File Amended Complaint (Document # 19) be denied (see footnote 1), Plaintiff's Motion for Injunctive Relief (Document # 22) be denied as moot, Plaintiff's Motion for Partial Summary Judgment (Document # 26) be denied, Plaintiff's Motion for Temporary Restraining Order (Document # 29) be denied as moot, Defendants' Motion for Summary Judgment (Document # 30) be granted and this case be dismissed it its entirety.[2]

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

July 29, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[2] If the district judge adopts this Report and Recommendation, the remaining pending motions will be moot.